J-A21011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 974 EDA 2022 |

Appeal from the Order Entered March 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002273-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: V.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 975 EDA 2022 |

Appeal from the Decree Entered March 11, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000653-2021

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 13, 2022**

V.R. (Father) appeals from the order and decree,[1] entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating Father's parental rights to his minor child, J.N.F. (Child) (born October 2012) pursuant

---

[1] Our Court consolidated the adoption and dependency docket numbers below for purposes of appeal.  *See* Pa.R.A.P. 513 (consolidation of multiple appeals).

to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act,[2] and changing the placement goal to adoption under section 6351 of the Juvenile Act.[3]  After careful review, we affirm.[4]

The City of Philadelphia Department of Human Services (DHS) first became involved with Father's family in 2007 with regard to incidents and issues involving Child's siblings that occurred before Child's birth.  In November 2019, DHS received a report from Child Protective Services (CPS) stating that Child had bruises on her face and that Child, who was seven years old at the time, reported Father had punched her in the face and pushed her down the stairs and that Mother watched, but did not intervene.  N.T. Termination Hearing, 2/15/22, at 8, 38.  DHS obtained an order of protective custody that day because Child was afraid to return home.  ***Id.*** at 10; ***see also*** Order, 11/26/19, DHS Exhibit #3.

On February 18, 2020, the court adjudicated Child dependent and committed Child to DHS custody.[5]  Child was placed in foster care.  The court

---

[2] 23 Pa.C.S. §§ 2101-2938.

[3] 42 Pa.C.S. §§ 6301 *et seq*.

[4] The trial court also involuntarily terminated Mother's parental rights.  Mother appealed at 991 EDA 2022 and 992 EDA 2022.  On August 3, 2022, Mother discontinued her appeal.

[5] When Child was just shy of two months old, DHS removed Child from the care of Father and Mother via an emergency custody authorization. On January 3, 2013, the trial court adjudicated Child dependent pursuant to subsection 6301(1) of the Juvenile Act.  ***See*** 42 Pa.C.S. § 6301(1).  Child was
*(Footnote Continued Next Page)*

ordered supervised visitation, but visits were at Child's discretion. Father was referred to Achieving Reunification Center (ARC) for parenting classes. Both parents were referred to Behavioral Health Services (BHS) for consultation and/or evaluation and monitoring.

On July 22, 2020, DHS created a revised Single Case Plan (SCP), which included the following objectives for Father: (1) make himself available to and actively participate in Community Umbrella Agency (CUA) case management services; (2) participate in ARC services; (3) attend supervised visits with Child at Child's discretion; and (4) follow recommendations of BHS.

Over the course of the next 18 months, the trial court conducted regular permanency review hearings pursuant to the Juvenile Act. At the August 17, 2020 hearing, the court found Father minimally compliant with the permanency plan. The court ordered Father to complete an anger management course, avail himself to CUA for a home assessment, sign necessary releases, and provide his mental health treatment plan and progress report.

In January 2021, DHS created a revised SCP. Father was ordered to: (1) make himself available to and actively participate in CUA case management services; (2) participate in ARC services; (3) have supervised virtual visits with Child at Child's discretion until the Covid-19 restrictions were

---

reunified with Father and Mother on May 15, 2015, at the age of three. **See Appeal of V.R.**, 1884 EDA 2021 (Pa. Super. filed March 4, 2022) (unpublished memorandum decision), at *2.

- 3 -

lifted; (4) follow BHS assessment recommendations; (5) provide proof of employment; (6) participate in anger management; (7) provide counsel with updated mental health treatment plan and progress reports; and (8) participate in family therapy when appropriate.

At the August 26, 2021 hearing, Father, Mother, and Child were all present and represented by counsel. Child testified *in camera*. The trial court found Father to be a perpetrator of child abuse under subsections 6303(b.1)(5) and (8) of the Child Protective Services Law (CPSL). **See** 23 Pa.C.S. §§ 6301-87.[6]

On November 2, 2021, DHS filed a petition to involuntarily terminate Father's parental rights to Child under sections 2511(a)(1), (2), (5), (8),[7] and

---

[6] Father appealed this finding. This Court affirmed the trial court's order on March 4, 2022. **See Appeal of V.R.**, 1884 EDA 2021 (Pa. Super. filed March 4, 2022) (unpublished memorandum decision). The Pennsylvania Supreme Court denied Father's petition for allowance of appeal. **See Appeal of V.R.**, 96 EAL 2022 (Pa. filed June 9, 2022).

[7] The relevant grounds for termination, as set forth 23 Pa.C.S. § 2511, are as follows:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential

*(Footnote Continued Next Page)*

(b)[8] of the Adoption Act and a petition for goal change to adoption. The trial

court held bifurcated hearings on February 15, 2022, and March 11, 2022, at

parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. §§ 2511(a)(1), (2), (5) & (8).

[8]   Section 2511(b) provides:

**(b) Other considerations**. – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishing, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant
*(Footnote Continued Next Page)*

which CUA case manager Erica Butler, who had worked with the family for two and one-half years, testified. Father, who was represented by counsel at both hearings, testified on his own behalf. ***See*** N.T. Termination Hearing, 2/15/22; N.T. Goal Change Hearing, 3/11/22. At the time of the hearings, Child was nine years old and had been in the same foster care home for 26 months. N.T. 2/15/22, at 11.

Case manager Butler testified that Father was minimally compliant with his SCP objectives and had made only minimal progress toward alleviating Child's dependency. ***Id.*** at 32. Butler also testified that Father told her "not to contact him to talk about he [court orders] or the single case plan." ***Id.*** at 45. Further, despite a court order, Butler testified that Father would not permit Butler to perform a home assessment for safety, ***id.*** at 14, 48, 62, and that he allowed Butler to come to the front porch on one occasion, "but refused to let [her] inside the home." ***Id.*** at 14. Father also refused to complete a parenting capacity evaluation (PCE). ***Id.*** at 28.

Butler also testified that Child is fearful of visiting with Father or Mother, and "declined all visitation since [] September, 2021." ***Id.*** at 18. Child did

---

to subsection (a)(1), (6) and (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

want virtual visitation so she could have some interaction with her siblings. *Id.*[9]

Further, Butler testified that Father had been diagnosed with a form of explosive anger disorder, *id.* at 25, but that Father had not engaged in the recommended individual therapy and anger management to control that disorder. *Id.* at 26. Butler noted that Father completed therapy that was ordered pursuant to a criminal matter involving violence against another child, wherein Father admitted he punched the child—not his own—numerous time in the stomach. *Id.* at 27, 67 ("I hit [a kid at my daughter's school] with a fist about seven times. He was a 12 years old."). Additionally, Butler testified to the threats she received from Father when she was pregnant: "[Father] stated to me that he would punch me, that he would beat me up. [] I was very pregnant. . . . He did indicate that he would punch me in my stomach." *Id.* at 31-32.

Butler testified that she has worked with Child for over two years, that Child has stated "pretty much during every visit that I've had with her that she does not want to return to the home. She is fearful." *Id.* at 32. She also testified that Child "wants to continue through an adoption process with her current foster parent, which she feels very securely bonded and attached to." *Id.* at 32-33. Child had expressed her preference to the trial court, as well,

_____

[9] At the March 11, 2022 hearing, Child's counsel informed the trial court that foster parent was willing to accommodate Child's visits with siblings. N.T. 3/11/22, at 10.

and current foster parent is an adoptive resource. *Id.* at 33-34. Butler noted that foster parent meets all of Child's physical, educational, emotional and developmental needs, and that Child shares her primary parent-child bond with her foster parent. *Id.* at 34-35. In contrast, Butler testified that, in addition to Father's minimal compliance with his SCP objectives, Child has little to no attachment to Father, and, in her opinion, Child would not be safe with Father and would suffer no harm if Father's parental rights were terminated. *Id.* at 35, 38. Pierre Simonvil, Esquire, counsel for Child, relayed as much at the goal change hearing:

> [Child] indicated that the abuse that brought this case in, as far as the black eye, was committed by her father. She also indicated that she does not feel safe in the presence of her parents, and she does not wish to return to the care of her parents, and she wishes to remain in her current placement and be adopted by her current caregiver.

N.T. 3/11/22, at 5.

At the conclusion of the hearings, the court entered an order terminating Father's parental rights to Child and changing the goal to adoption. N.T. Hearing, 3/11/22, at 12-15. The court found DHS established termination under sections 2511(a)(1), (2), (5), (8) and (b), by clear and convincing evidence, and that reunification with Father was not a viable option. Father

timely appealed to this Court. Both Father and the trial court have complied with Pa.R.A.P. 1925.[10]

Father raises the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(1)?

2. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(2)?

3. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(5)?

4. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(8)?

5. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(b)?

6. Whether the trial court erred by determining it to be in [Child's] best interest to change the goal from reunification to adoption?

Appellant's Brief, at 5-6.

In cases involving termination of parental rights, "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.

---

[10] The Honorable Wendi Barish filed a "Notice of Compliance with Rule of Appellate Procedure 1925(a)," indicating that her reasons for termination and goal change were stated on the record. Notice, 5/12/22 (citing N.T. 3/11/22, at 12-15). *See* Pa.R.A.P. 1925(a)(1). We find the reasons for goal change not clearly stated on the record. Under the circumstances, however, we find Father's challenge to the change of goal moot. *See infra* at 12.

Super. 2009)). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc) (internal citations omitted). On review, "we employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *Id.*

> Parental rights may be involuntarily terminated where any one subsection of [s]ection 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his . . . parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted). Additionally, this Court can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a). *In re B.L.W.*, *supra* at 384.

During the two years Child was in placement, Father did not participate in recommended services. In particular, Father failed to participate in individual therapy and anger management, services that were essential to rebuilding his relationship with Child and remedying the conditions that led to placement. As a result of Father's minimal compliance and failure to comply with DHS and BHS recommendations, Child remains fearful of returning home

and has no meaningful bond with Father. Moreover, in the past two years, Child has developed a healthy bond with her foster parent, who meets Child's physical, medical, educational and emotional needs.

After our review, we find the record supports the court's decision to terminate Father's parental rights under section 2511(a)(5) and (b), and we affirm. Additionally, the evidence supports the court's conclusion that termination of Father's parental rights is in the best interest of Child. *See* 23 Pa.C.S. § 2511(a)(5) (parental rights may be terminated where clear and convincing evidence proves "child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child"); *id.* at § 2511(b) (court shall give primary consideration to developmental, physical and emotional needs and welfare of child; rights of parent shall not be terminated solely on basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond control of parent). The trial court also considered Child's bond with foster parent. *See In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) ("Common sense dictates that courts considering termination must also consider whether

the children are in a pre-adoptive home and whether they have a bond with their foster parents."); ***In the Interest of N.G.***, 235 A.3d 1274, 1281 (Pa. Super. 2020) (for section 2511(b) purposes, "trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent") (citation omitted);  ***see also*** N.T. 2/15/22, at 32-33 (DHS case manager Butler recognizing Child's bond with foster parent); N.T. 3/11/22, at 5 (Child's counsel stating Child indicated she wishes to be adopted by her foster parent); ***id.*** at 10 (child advocate stating Child is thriving in her "stable and supportive" foster home).

The trial court's order and decree are supported in the record.  We discern no abuse of discretion or error of law.  ***In re N.C.***, ***supra***; ***In re B.L.W.***, ***supra***.

Because we have concluded that the trial court did not abuse its discretion in granting the petition to terminate Father's parental rights, Father's challenge to the goal change is moot.  ***Interest of A.M.***, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (citing ***Interest of D.R.−W.***, 227 A.3d 905, 917 (Pa. Super. 2020)).  ***See In re H.S.W.C.-B***, 836 A.2d 908, 911 (Pa. 2003) (holding that orders granting or denying goal changes, as well as orders terminating or preserving parental rights, are final and appealable when entered and remain in effect until overturned on appeal or rendered moot by a subsequent order); ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) ("An

issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").[11]

Order and decree affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *10/13/2022*

---

[11] Even if we were to reach the merits of this issue, we would conclude that no relief is due. The Juvenile Act is intended to "prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment." ***In re N.C.***, 909 A.2d at 823. As a result, "[a]n agency is also not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. However, an agency must redirect its efforts towards placing the child in an adoptive home only after the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed[.]" ***In the Interest of T.M.W.***, 232 A.3d 937, 947 (Pa. Super. 2020) (cleaned up, emphasis in original). Here, the court considered, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of Father's compliance with the SCP; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for Child; (5) Child's safety; and (6) the fact that Child had been in placement for over two years. ***See In Interest of L.T.***, 158 A.3d 1266, 1277 (Pa. Super. 2017) (citation omitted).